IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>KEVIN BURRESS | Criminal Action No.<br><br>4:21-CR-041-SDG-WEJ |

**United States' Response in Opposition to Defendant's Motion to Dismiss**

The United States of America, by Ryan K. Buchanan, United States Attorney, and Annalise K. Peters, Assistant United States Attorney for the Northern District of Georgia, files this Response in Opposition to Defendant's Motion to Dismiss.

**Background**

Defendant Kevin Burress has been charged with two counts of cyberstalking, one count of extortion, and one count of possession of a machinegun. (Doc. 11.) After the grand jury returned the indictment in November 2021, Defendant sent numerous communications to the court (*see* Docs. 20, 21, 25, 26) and to undersigned counsel that contained, among other things, confusing content. Accordingly, the United States sought a court order permitting it to conduct a mental examination of Defendant pursuant to 18 U.S.C. § 4241 in light of an anticipated incompetency claim. (Doc. 27.) Prior to holding a competency hearing, the United States requested that the Court order that a psychiatric or psychological examination of Defendant be conducted, pursuant to 18 U.S.C. § 4241(b). (*Id.*) In February 2022, this Court granted the government's motion. (Doc. 34.) On March

15, 2022, Defendant was transferred from the Robert A. Deyton Detention Facility (RADD) to the Federal Medical Center in Butner, North Carolina (FMC Butner) for a competency evaluation. Defendant remained at FMC Butner from March 15 until approximately June 2022. On June 13, 2022, a forensic psychologist at FMC Butner issued a written report of her findings, diagnosing Defendant with schizoaffective disorder, bipolar type, but concluding that Defendant would be competent to stand trial, so long as he "[remained] compliant with his psychiatric medication treatment." (Doc. 63 at 1.)

After Defendant was transferred back to RADD, his anti-psychotic medications were significantly adjusted, and defense counsel became concerned again about his competency. (*Id.*) In November 2022, a forensic psychologist hired by defense counsel performed a competency evaluation and found that Defendant was presently incompetent to stand trial. (*Id.*) As a result, the parties filed a joint motion for a competency hearing and requested that Defendant be committed for evaluation. (Doc. 61.) After a telephonic status conference, the Court entered an order on December 13, 2022, ordering that Defendant be committed for evaluation and restoration to competency pursuant to § 4241(d). (Doc. 63.) Specifically, the Court ordered that Defendant be committed to the custody of the Attorney General to be hospitalized for 90 days of treatment to determine whether there is a substantial probability in the foreseeable future that Defendant would attain the capacity to permit the proceedings to go forward. (*Id.*) This Court recommended that the Bureau of Prisons (BOP) send Defendant back to FMC Butner since he had previously been treated there (*Id.*)

The following week, on December 22, 2022, the BOP emailed the Court the following notice:

> The Court has ordered a 4241d study to be completed in 90 days and to be transported to the study site forthwith. I am writing to inform the Court that this inmate will not be able to complete a 4241d study within 90 days, as the study itself takes 4 months to complete. Additionally, we are currently operating with an approximate 9-10 month wait for a 4241 bed.

(3/15/23 Doc. Entry.)[1] On February 24, 2023, the government received a request from FMC Butner for Defendant's medical records, which the government provided on March 2. (*See* Exhibit A, attached hereto.) On March 3, the government asked FMC Butner if Defendant had arrived at the facility, and FMC Butner responded that he was on their "incoming list." (*Id.*)

On March 28, a few weeks after the parties learned of the December 2022 notice from BOP about the current delay, the government emailed BOP asking the following:

> Could you please let us know when Kevin Burress is scheduled to arrive at Butner? The court received notice from BOP a few weeks ago that BOP is operating with a 9-10 month wait for a 4241 bed. Mr. Burress's attorney, Nicole Kaplan, is concerned that he is continuing to deteriorate in his current custodial situation. If Mr. Burress is scheduled to arrive relatively soon, we may not need to take any action, but if it is going to be a long wait, we may need to ask the court to take some action to expedite things. Please let us know. Thank you.

---

[1] The parties learned about this notice to the Court from BOP when it was docketed on March 15, 2023.

3

(*See* Exhibit B, attached hereto.) On April 5, Dr. Dia Boutwell, the Chief of the Psychological Evaluations Section of the BOP, responded with the following:

> Because the restoration pipeline is managed nationally, the reviews for cases to be expedited due to acute clinical decompensation are also made at that level in order to ensure the BOP remains fair and equitable to the 94 judicial districts we serve. In order to complete a review, we need documentation from medical or mental health staff at the facility where Mr. Burress is currently being held describing the changes in his mental health symptoms and presentation. If you, his attorney, or the US Marshals can provide that kind of information, we are happy to review it.

(*Id.*) The same day, the government added defense counsel to the email thread so that she could provide more information about Defendant's current condition. (*Id.*) The government also provided BOP with Defendant's most recent medical records from RADD, which had been sent directly to FMC Butner a few days earlier. (*Id.*) Defense counsel responded with her concerns that Defendant is decompensating and noted her belief that Defendant's "deterioration has increased over the last month." (*See* Exhibit C, attached hereto.) Dr. Boutwell responded:

> Thank you for your response. I understand your concerns, but I need documentation from a medical or mental health provider at the facility where he is housed describing his current functioning. Please understand we have many individuals awaiting competency restoration treatment and many of them have symptoms such as those exhibited by Mr. Burress. If he is functioning adequately at the facility in which he is housed, we cannot justify moving him ahead in line of the other defendants who have been waiting longer. That is not fair to those defendants or any of the parties involved in those cases.

(*Id.*)

On June 15, the government emailed Dr. Boutwell requesting an update on where Defendant was on the waitlist. (*Id.*) A BOP employee responded that Defendant had been designated to FMC Butner on January 5, 2023 and was scheduled for admission in September 2023. (*Id.*)

This morning, on August 11, Dr. Boutwell reported that Defendant is scheduled for admission to FMC Butner the week of September 25.[2] (*See* Exhibit D, attached hereto.)

## Argument

The Court should deny Defendant's motion to dismiss the indictment because dismissal is unwarranted under IDRA and would be improper under the Speedy Trial Act. Pre-hospitalization delays are not included in IDRA time computation, and Defendant has shown no prejudice or other egregious circumstances that warrant dismissal. In fact, the government has been diligent in both responding to BOP's requests for information and proactively asking for updates from BOP. Dismissal would be improper under the Speedy Trial Act because the time that Defendant is incompetent is excluded by statute. Defendant is scheduled for admission to FMC Butner in less than two months. To help ensure no further delays, this Court could enter the attached proposed order directing BOP that he be admitted to begin evaluation next month.

---

[2] In addition to the emails noted here, undersigned counsel placed several calls to BOP over the last eight months seeking other updates about Defendant's status on the waitlist.

### 1. Pre-hospitalization Delay Does Not Require Dismissing the Indictment.

Under the Insanity Defense Reform Act (IDRA), when a court finds by a preponderance of evidence that a defendant is incompetent, it must commit the defendant to the Attorney General's custody. Then,

> [t]he Attorney General shall hospitalize the defendant for treatment in a suitable facility for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and for an additional reasonable period of time until—
>
> (A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or
>
> (B) the pending charges against him are disposed of according to law;
>
> whichever is earlier.

18 U.S.C. § 4241(d)(1), (2). In *United States v. Donofrio*, the Eleventh Circuit held that once a court finds a defendant incompetent to stand trial under IDRA, the defendant must be committed to the Attorney General's custody for a competency evaluation. 896 F.2d 1301, 1302 (11th Cir. 1990). The court held that the statutory language was "mandatory and that the district court did not have the authority to circumvent the hospitalization." *Id.*

The plain language of IDRA limits a defendant's actual *term of hospitalization* to four months and an additional reasonable period of time as prescribed by statute. *Id.* Nothing in the statute suggests that the time computation includes periods where a defendant is awaiting transfer for the evaluation to begin. To the contrary,

6

the four-month period begins when a defendant is admitted to a treatment facility. *See, e.g., United States v. Magassouba*, 544 F.3d 387, 410 (2d Cir. 2008) (concluding that the time between a commitment order and the defendant's admission to a treatment facility does not factor into the calculation of IDRA's four-month clock, noting that "the Attorney General did not actually 'hospitalize the defendant for treatment,' 18 U.S.C. § 4241(d), until December 22, 2004, when Magassouba was admitted to Butner").

Courts in this Circuit, including in this district, have found that dismissal is unwarranted where a defendant has waited for admission to a facility for many months. For instance, in April of this year, Judge Jones adopted Judge Larkins' report and recommendation and denied a defendant's motion to dismiss under nearly identical circumstances. *United States v. McCall*, No. 1:21-CR-00474-UNBA, 2022 WL 19561433, *1-2 (N.D. Ga. Dec. 12, 2022), *report and recommendation adopted*, No. 1:21-CR-0474-UNA, 2023 WL 3010177 (N.D. Ga. Apr. 19, 2023). In *McCall*, an incompetent defendant claimed a due process violation and an IDRA violation where he had been waiting for about eight months to begin his hospitalization and evaluation. *Id.* The court declined to make a finding as to any due process violation because, "regardless of the answer, dismissal of the indictment is not the appropriate remedy at this time." *Id.* While the court expressed concern about the delay and warned the government that there could possibly be some duration of pre-hospitalization confinement that could warrant dismissal, it readily denied the motion to dismiss. *Id.* at *3. The *McCall* court emphasized that only "extreme circumstances" would warrant dismissal and found that a defendant must show

7

"outrageous circumstances or demonstrable prejudice" to render dismissal appropriate, which the defendant had not done. *Id.* Instead, the court ordered the government to (1) promptly transport the defendant to a treatment facility (but declined to set a particular time limit) and (2) to update the court every 14 days about the defendant's hospitalization status until he was transported for treatment. *Id.* at *3. *See also United States v. Cottingham*, No. 519CR00010LCBJHE1, 2020 WL 4341720, at *1-2, 4 (N.D. Ala. July 6, 2020), *report and recommendation adopted*, 2020 WL 4336018 (N.D. Ala. July 28, 2020) (denying motion to dismiss where defendant was in custody for about six months waiting for transfer to begin a § 4241(d) evaluation, finding that defendant failed to show prejudice and a "lack of bed space [] is insufficient to support dismissal").

This case is no different from *McCall* or *Cottingham*. To be sure, a total anticipated delay of nine months is concerning, which is why the government has proactively reached out to the BOP on multiple occasions to request status updates and to expedite Defendant's admission. But Defendant has identified no prejudice he has suffered as a result of the delay or any "outrageous circumstances." *McCall*, 2022 WL 19561433, at *2. A lack of bed space at FMC Butner does not rise to that level.

The cases Defendant relies on are inapposite. Defendant quotes from *United States v. Lara*, 1:21-CR-01930-MLG, 2023 WL 3168646 (D.N.M. Apr. 28, 2023), for the notion that pre-hospitalization waiting periods should be included in the time calculation under IDRA. (Doc. 73 at 4.) But after exploring that notion, the *Lara* court stated, "[t]his Court respectfully disagrees" and held that IDRA's four-

8

month clock does not begin until the defendant arrives at the hospital facility. *Id.* at *3, *6. The defendant in *Lara* had been waiting approximately eight months for transfer to a treatment facility, and the court denied his motion to dismiss.[3]

Although the *Donnelly* and *Carter* courts found that pre-hospitalization delays should be included in IDRA time calculations, neither case ended with the result Defendants seeks here. In *Donnelly*, the Ninth Circuit concluded that "Congress did *not* prescribe dismissal of the indictment as a remedy for violation of the time limits imposed by § 4241(d)." 41 F. 4th 1102, 1106 (9th Cir. 2022) (emphasis added). The court found that "both [the defendant's] liberty interest and Congress's directive to restore incompetent defendants where possible will be best served by requiring the government to hospitalize [the defendant] without further delay." *Id.* at 1107. The same is true here.

Finally, the *Carter* case is readily distinguishable from this one. 583 F.Supp.3d 94 (D.D.C. 2022). Most notably, when the defendant sought dismissal of the indictment, he was requesting that he be civilly committed, acknowledging that he could not be safely released into society. *Id.* at 104. When the court granted the motion to dismiss, it stayed the decision for several weeks to give the government

---

[3] The court ordered the government to hospitalize the defendant within a week and warned there could be a risk of dismissal if the government failed to comply. *Id.* at *7. The government ignored the court's warnings and failed to hospitalize the defendant within a week, as ordered, so the court later dismissed the indictment. *Lara*, No. 2023 WL 3316274 (D.N.M. May 5, 2023), *reconsideration denied*, 2023 WL 3304284, *2 (D.N.M. May 8, 2023). Still, the court noted that dismissal was a "harsh outcome" and refused to dismiss with prejudice, allowing the government to reindict the case and cure its error. *Lara*, WL3316274, at *2.

additional time to pursue the civil commitment that the defendant had requested. *Id.* This case stands in stark contrast, where Defendant seeks dismissal and release from custody.[4]

### 2. There Is No Speedy Trial Act Violation.

The Speedy Trial Act mandates that a defendant be brought to trial within seventy days of "the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). If trial does not begin within such time, "the information or indictment shall be dismissed on motion of the defendant," either with or without prejudice. *Id.* § 3162(a)(2). "When the clock is triggered by a defendant's first appearance, the clock begins to run on the day after the defendant's appearance." *United States v. Hughes*, 840 F.3d 1368, 1377 (11th Cir. 2016).

The Speedy Trial Act recognizes that certain delays are excludable from the seventy-day clock. *See* 18 U.S.C. § 3161(h). One exclusion is for any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D). Another exclusion is for "[a]ny period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial." 18 U.S.C. § 3161(h)(4). Another exclusion is for "delay resulting from

---

[4] Notably, as recently as two weeks ago, the victims in this case reported that Defendant is still attempting to contact them by phone and email while in custody.

transportation … to and from places of examination or hospitalization….” 18 U.S.C. § 3161(h)(1)(F).

Defendant argues that his statutory right to a speedy trial has been violated because the exclusion for delay resulting from transportation to hospitalization that exceeds "ten days from the date an order … directing such transportation … shall be presumed to be unreasonable." *Id.*; (Doc. 73 at 6). And here, of course, Defendant has been waiting for much longer than ten days.

But Defendant ignores the fact that "[a]ny period of delay resulting from the fact that the defendant is mentally incompetent" is also excluded from the speedy trial computation. 18 U.S.C. § 3161(h)(4). In fact, the Eleventh Circuit has concluded that, "if a defendant is mentally incompetent under § 3161(h)(4), that time is excludable even if there is also a transportation delay that is unreasonably long and thus not excludable under § 3161(h)(1)(F)." *United States v. Pendleton*, 665 F. App'x 836, 839 (11th Cir. 2016). In *Pendleton*, the defendant contended that the days beyond ten that it took to transport him to a medical facility should not have been excluded under the speedy trial clock, even though the defendant was incompetent during that time. *Id.* The court held that such time was properly excluded under § 3161(h)(4) and that the defendant's argument "that he could still receive the benefit of § 3161(h)(1)(F)'s 10-day limit on reasonable transportation reads into the statute a conflict between § 3161(h)(1)(F) and (h)(4) that does not exist." *Id.* The Eleventh Circuit further held, "[a]ccording to the statute's plain language, any qualifying delay is excludable, regardless of whether it would or would not qualify under a different subsection of the statute." *Id.*

Here, because Defendant is incompetent to stand trial—and has been incompetent the entire time he has been waiting to be transferred—that time is properly excluded. The Speedy Trial Act remains tolled, and there have been fewer than 70 excludable days. Accordingly, the Court should deny Defendant's motion on statutory speedy trial grounds.

## Conclusion

For these reasons, the government respectfully requests the Court deny Defendant's Motion to Dismiss Indictment. Further, the Court can enter the attached proposed order, or a similar order, directing the BOP to transfer Defendant to FMC Butner by September 2023 to help ensure any further delays.

Respectfully submitted,

RYAN K. BUCHANAN
*United States Attorney*

/s/ ANNALISE K. PETERS
*Assistant United States Attorney*
Georgia Bar No. 550845
annalise.peters@usdoj.gov

## Certificate of Service

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

August 11, 2023

/s/ ANNALISE K. PETERS
ANNALISE K. PETERS

*Assistant United States Attorney*